MULLENS, Admr., Appellant,

v.

BINSKY, Appellee, et al.

[Cite as *Mullens v. Binsky* (1998), 130 Ohio App.3d 64.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE11–1451.

Decided Sept. 24, 1998.

*Delena G. Edwards; Garey, Williams, Parenti, Finney, Lewis, McManus, Watson & Sperando* and *Madison B. McClellan,* for appellant.

*Richard Overstud,* for appellee Beatrice Binsky.

DESHLER, Presiding Judge.

This is an appeal by plaintiff, Debra Mullens, from a summary judgment entered by the Franklin County Court of Common Pleas in favor of defendant, Beatrice Binsky.

On May 20, 1996, plaintiff Debra Mullens, administrator of the estate of Eric Mullens–Steele, filed a complaint, naming as defendants Beatrice Binsky, Bob Binsky, Frederick Meister, Kay Meister, Edward Newman, Elaine Newman, Phillip Paul and "Mrs. Phillip Paul."[1] The complaint alleged that on June 5, 1994, Eric Mullens–Steele ("decedent"), was an invited guest at a graduation party on residential property owned by Beatrice Binsky and Bob Binsky. The complaint further alleged that defendants were negligent in failing to exercise reasonable care in supervising guests swimming in a pool on the property, resulting in the drowning of decedent.

---

1. On August 7, 1996, the action against defendants Phillip Paul and "Mrs. Phillip Paul" was dismissed pursuant to Civ.R. 41(A)(1).

On June 20, 1996, defendants Beatrice Binsky and Bob Binsky filed a motion for summary judgment. Motions for summary judgment were subsequently filed by defendants Fred Meister, Kay Meister, Edward Newman, and Elaine Newman.

By decision filed November 14, 1997, the trial court granted summary judgment in favor of defendant Bob Binsky, on the basis that Binsky had no ownership interest in the premises (by virtue of a divorce) and that he was not present at the time of the incident. On September 24, 1997, the trial court rendered a decision granting summary judgment in favor of defendant Beatrice Binsky. The decision of the trial court was journalized by judgment entry filed on October 6, 1997. The judgment entry contained a Civ.R. 54(B) certification of "no just reason for delay."

Plaintiff appeals from the trial court's judgment entry of October 6, 1997, granting summary judgment in favor of defendant Beatrice Binsky, and sets forth the following assignments of error for review:

"*Assignment of Error Number One*

"The Common Pleas Court erred by awarding summary judgment in favor of Defendants–Appellees where the record demonstrated genuine issues of material fact regarding all elements of Plaintiff's negligence claims.

"*Assignment of Error Number Two*

"The Common Pleas Court erred by applying an erroneous definition of proximate cause in granting summary judgment in favor of Defendants–Appellees.

"*Assignment of Error Number Three*

"The Common Pleas Court erred by finding that Plaintiff's decedent assumed the risk of his injuries and death."

The facts of this case indicate that on June 5, 1994, decedent, age eighteen, attended a graduation party at a residence in Bexley owned by defendant Beatrice Binsky ("defendant"). Guests began arriving at the party at approximately 3:00 p.m. The defendant estimated that between seventy-five and eighty people attended the party throughout the afternoon. During the party, a number of the guests went swimming in the defendant's in-ground swimming pool. The deepest part of the pool is approximately eight and one half feet, while the most shallow point in the pool is forty-two inches. The pool has one set of stairs but no ladder. At approximately 6:00 p.m., decedent's body was discovered in the deep end of the pool. Immediate efforts to resuscitate the decedent were undertaken but to no avail.

The evidence further indicates that, while there were a number of people in and around the pool area on the day of the party, nobody observed what happened to the decedent; specifically, none of the guests observed how the decedent got into the deep end of the water or where he first went down under the water at the time of the accident, nor did anyone notice any struggle ·or disturbance prior to the discovery of his body at the bottom of the pool.

Trevor Cooke, a guest at the party, pulled decedent from the pool. Cooke stated in his deposition that he last observed the decedent "in the water with his arms resting, leaning against the back of the pool." Daniel Meister, one of the graduates who attended the party, observed the decedent during the party standing in the shallow end of the pool. Cory Neugebauer, a high school student who attended the party, stated in an affidavit that he left the party at approximately 5:30 p.m. and that, when he left, the decedent "was standing in the shallow end against the side of the pool."

Plaintiff's three assignments of error are interrelated and will be addressed together. Plaintiff contends that summary judgment was inappropriate because genuine issues of material fact exist, including whether defendant breached a duty of care by allowing horseplay around the pool and failing to properly supervise the activities, whether the breakpoint in the pool constituted a hidden danger, whether defendant was negligent in failing to utilize a rope and float line and whether the failure to maintain proper water clarity prevented or hindered the timely rescue of the decedent. Plaintiff also argues that the trial court erred by applying an erroneous definition of proximate cause and in finding that the decedent assumed the risk of his death.

In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, the Ohio Supreme Court noted the applicable standard in ruling on a motion for summary judgment, stating:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one·conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

In order to defeat a motion for summary judgment brought in a negligence action, it is incumbent upon the plaintiff to identify a duty owed to plaintiff by the defendant; further, there must be sufficient evidence, "considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached, that the breach of that duty was the proximate cause of the

plaintiff's injury and that the plaintiff was injured." *Nagy v. Wallis* (Apr. 27, 1995), Cuyahoga App. No. 66989, unreported, 1995 WL 248524. In order "[t]o warrant a finding that the negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence alleged and that it was such as ought to have been foreseen in the light of the attending circumstances." *Id.* Under Ohio law, "[a]n inference of negligence can arise only upon the proof of some fact from which such inference can be reasonably drawn and it can never arise from mere guess, speculation, or wishful thinking." *Parras v. Standard Oil Co.* (1953), 160 Ohio St. 315, 52 O.O. 206, 116 N.E.2d 300, paragraph two of the syllabus.

▬ As noted above, plaintiff argues that genuine issues of material fact exist, including whether the defendant, as host of the party, negligently allowed horseplay around the pool and failed to properly supervise the guests. We begin with the proposition that "[t]he measure of any duty owed to an injured party is dependent upon the status of that party with respect to the possessor of the premises." *Easterling v. Am. Olean Tile Co., Inc.* (1991), 75 Ohio App.3d 846, 853, 600 N.E.2d 1088, 1093. The parties in this case do not dispute the fact that the decedent was a social guest at defendant's residence.

In *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraphs two and three of the syllabus, the Ohio Supreme Court held the following regarding a host's duty to a social guest:

"2. A host is not an insurer of the safety of a guest while upon the premises of the host and there is no implied warranty on the part of a host that the premises to which a guest is invited by him are in safe condition.

"3. A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition."

▬ Thus, the defendant "owed a duty of ordinary care to appellant only to refrain from an act of negligence and to warn of concealed or hidden dangers upon the premises." *Hager v. Griesse* (1985) 29 Ohio App.3d 329, 331, 29 OBR 456, 458, 505 N.E.2d 982, 985. Further, it is well settled that "[a]n owner or occupier of land owes no duty to warn invitees entering the property of an open and obvious danger on its property." *Musa v. Musa* (Dec. 10, 1996), Franklin App. No. 96APE07–831, unreported, 1996 WL 715473. The rationale behind this rule is that an open and obvious danger itself serves as a warning and the owner

may reasonably expect that individuals entering the premises will discover such danger and take appropriate measures to protect themselves. *Id.*

The decision in *Hager, supra,* raised the issue of the duty owed by a host to supervise social guests during a swimming pool party where horseplay resulted in serious injury to a guest. In *Hager,* the plaintiff, a guest of the defendants, had been drinking and engaged in horseplay with another guest, leading to that individual being thrown into the pool. The plaintiff left for a short time to obtain more beer and, after returning, engaged in more horseplay with the same guest; this time, both the plaintiff and the other guest fell into the pool, resulting in injuries to the plaintiff when he struck his head on the bottom of the shallow end. The trial court held that defendant owed no duty to supervise or warn.

On appeal, the court in *Hager* rejected plaintiff's contention that defendants, as hosts, failed to properly supervise the activities, holding in part:

"The record of this case reveals no act of negligence or failure to warn of concealable hidden dangers upon the premises on the part of appellees. First, appellant initiated the horseplay which resulted in his dive into the shallow end of the swimming pool. * * * Appellant fails to show that his injuries resulted from appellees' failure to exercise ordinary care in supervising the activities conducted by them on the premises.

"Second, appellees violated no duty to warn. A host has a duty to warn a guest only if (1) a condition known to the host exists which one of ordinary prudence and foresight should reasonably consider dangerous, and (2) the host has reason to believe the guest does not know and will not discover such dangerous condition. * * * The swimming pool in the instant case was not concealed or hidden. Furthermore, it is common knowledge that the depth of a pool may vary. Finally, appellant was fully aware of the presence and location of the pool, even though the pool area was unlighted.

"The court below was correct to find that appellees owed no duty toward appellant as a social guest regarding the supervision of appellant or other guests, and owed no duty to warn appellant." *Hager, supra,* 29 Ohio App.3d at 331, 29 OBR at 459, 505 N.E.2d at 985–986.

In the present case, the trial court relied in part on the holding in *Hager* in noting that a swimming pool normally does not present a hidden danger involving an unreasonably dangerous condition; rather, the danger posed, *i.e.,* risk of drowning, is an open and obvious condition which even children of tender years are able to appreciate. The court further relied on *Hager* for the proposition that, based on evidence that the decedent had been in the pool for a considerable amount of time before the accident, "common sense dictates that a 18 year old adult of like experience and education should have known both that the pool did

in fact have a deep end, and where its breakpoint was located." The trial court concluded that the defendant did not owe a duty to warn the decedent of open and obvious dangers associated with the use of the pool.

■ As to the issue of duty to warn, it has been held that "a pool becomes unreasonably dangerous only when there is a hidden defect or dangerous condition posing a risk of death or serious bodily harm." *Scifres v. Kraft* (Ky.App.1996), 916 S.W.2d 779, 781. Further, as noted by the trial court, a swimming pool presents an open and obvious condition that should be appreciated by both minors and adults. See *Torf v. Commonwealth Edison* (1994), 268 Ill.App.3d 87, 205 Ill.Dec. 911, 644 N.E.2d 467, 469 ("generally the danger of drowning in a body of water is considered an open and obvious risk which both minors and adults should be expected to be able to appreciate and avoid").

■ Regarding the issue of supervision, we note that, in general, "in the absence of some 'special relationship,' there is no duty to act affirmatively for the protection of others or to prevent a third person from causing harm to another." *Nusairat v. Fast* (Feb. 11, 1997), Franklin App. No. 96APE07–925, unreported, 1997 WL 65531. As noted above, in the context of the relationship between a social host and guest, defendant's duty to her guests is no greater than the duty to exercise ordinary care. *Hager, supra.* We are unaware of any authority imposing a duty on a social host to maintain constant supervision of an adult guest. In *Belcher v. James* (1993), 207 Ga.App. 796, 429 S.E.2d 165, 166, the court held that the owner of a residential swimming pool did not owe a duty to watch over the decedent, an adult invitee, on the grounds asserted by plaintiff that it was foreseeable that all persons who swim may drown. Rather, the court concluded that even assuming the decedent was not a good swimmer, there was no reason to believe that the invitee could not exercise ordinary care for his own safety or that he was in any danger or disability. *Id.*

Similar to *Hager*, plaintiff in the instant case has failed to set forth facts showing that the injuries to decedent resulted from the failure of defendant to exercise ordinary care in refraining from an act of negligence or to warn of a concealed or hidden danger. *Hager, supra*, 29 Ohio App.3d at 331, 29 OBR at 458–459, 505 N.E.2d at 985–986. Accordingly, we find no error in the trial court's determination that the dangers associated with the pool were open and obvious to the decedent, an eighteen-year old, thus negating a duty on the part of defendant to supervise or warn.

■ Plaintiff contends that there exists an issue of fact regarding whether defendant allowed the guests to engage in "horseplay" which may have contributed to the decedent's death. We note initially that, while there was evidence that some form of horseplay occurred during the party, there is no evidence that the

accident was the result of horseplay directed at the decedent. Specifically, while there was deposition testimony that some individuals were thrown into the pool during the afternoon, and that the decedent participated in this activity,[2] there was no deposition testimony that decedent himself was thrown into the pool.

We note that courts have held that the relationship of host and guest gives no right to protection from obvious dangers, including injuries received as a result of horseplay. See *Martin v. Shea* (Ind.1984), 463 N.E.2d 1092 (host not liable for injuries to guest as a result of horseplay around swimming pool); *Freshwater v. Piqua Baptist Church* (Apr. 7, 1989), Miami App. No. 88–CA–30, unreported, 1989 WL 33106 (fifteen-year-old plaintiff was in at least as good a position as the supervisors to appreciate the risk of injury that might result from teenagers' horseplay; thus church and its supervisors had no duty to warn plaintiff of danger represented by horseplay in darkened hallway outside room where movie was being shown).

In *Stoker v. Saxe* (Feb. 13, 1992), Cuyahoga App. No. 59793, unreported, 1992 WL 25287, plaintiff alleged that he was intentionally and willfully assaulted by a third party at a swimming pool party hosted by defendants. Plaintiff alleged that defendants, as hosts, negligently permitted the third party to engage in horseplay in which plaintiff was thrown into the pool, resulting in plaintiff's injuries. In *Stoker*, the court affirmed the trial court's grant of summary judgment in favor of defendants, holding that "plaintiff was not injured by an act of the [defendants], or by activities carried on by the [defendants]." The court further noted that plaintiff was not injured from a condition the defendants "should reasonably consider dangerous, and unknown to plaintiff." *Id.*

Similarly, in the instant case the trial court found that "the undisputed facts show that no person actually witnessed Eric Mullens–Steele being pushed into the deep end of the pool. In fact, nobody knows how Eric ended up in the deep end of the pool, or how long he was there." Upon review of the record, we agree with the trial court's determination that there was an absence of evidence that defendant was injured by an act of defendant or that a third party pushed decedent into the pool or assaulted him in some manner; thus, the trial court properly found that no genuine issue of material fact existed. Moreover, while there was evidence that horseplay was directed toward other individuals during the party, and that, according to one witness, the decedent himself attempted "to throw people into the pool," liability may not be imposed for the failure to warn of an obvious danger which individuals participating in the activity would have been aware. *Shea, supra*, 463 N.E.2d 1092.

---

**2.** Daniel Meister stated in his deposition that "I remember him [the decedent] trying on a couple different occasions to throw people into the pool."

Plaintiff also asserted before the trial court that the absence of a rope and float line constituted a hidden danger which could have caused decedent's death. In finding no duty owed by defendant, the trial court held:

"[P]laintiff has failed to identify for this Court any regulation, statute or controlling caselaw which places an affirmative duty on a residential pool owner to maintain such a safety device.

" * * *

"The present defendant was under no duty to install a rope and float line separating the deep from shallow end of the pool. Despite the absence of a specific legal duty to maintain such a safety device, the plaintiff has also failed to point out exactly how Eric Mullens–Steele ended up in the deep end of the pool. All that this Court has been presented with is speculation as to how the decedent drowned. The fact that the decedent drowned in the defendant's pool, without further evidence showing negligence on the defendant's part, leaves a future fact finder in a position to merely guess as to what caused the decedent's death. * * *. A more substantial causal link must be established to avoid summary judgment. Otherwise, residential pool owners * * * risk becoming both insurers of their guests['] safety and warrantors of their property, a result which Ohio law clearly prohibits."

In addressing plaintiff's argument on this issue, the trial court relied in part on *Toopes v. Gutierrez* (Mar. 30, 1993), Miami App. No. 92 CA 38, unreported, 1993 WL 93904. In *Toopes*, the plaintiff, age seventeen, was injured when he dove into defendant's swimming pool and struck his forehead. Plaintiff brought an action against defendant, alleging that defendant was negligent in failing to provide a rope or other marking dividing the deep end from the shallow section of the pool. The trial court granted summary judgment in favor of the defendant. On appeal, the court in *Toopes*, relying upon *Scheibel, supra*, 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, affirmed the trial court's decision, holding that "[t]here is no evidence that defendant failed to maintain the pool, or that he failed to take any required safety precautions."

Other courts have held that, where there is no evidence that alleged defects, such as the absence of a rope or ladder, contributed to a plaintiff's injuries, "the theoretical danger caused by the absence [of such devices] is immaterial." *Massey v. Wright* (Ala.1984), 447 So.2d 169, 173; *Hemphill v. Johnson* (1998), 230 Ga.App. 478, 497 S.E.2d 16, 19 (where there was no evidence that drowning was caused by any defect in pool, the decedent's poor swimming abilities or the absence of safety equipment "does not convert the pool into a mantrap because the risk of drowning remains obvious," even to an eleven-year-old child). In the present case, we agree with the trial court's determination that, in the absence of a statutory requirement imposing a duty on a homeowner to provide a rope or

float line in a residential swimming pool, and where the evidence fails to indicate how decedent drowned or that the presence of a rope or float line would have prevented the accident, the mere fact that the pool lacked such equipment does not, standing alone, provide the basis for liability against the defendant.

Regarding the issue of water clarity in the pool, plaintiff argued before the trial court that poor visibility could have resulted in decedent not perceiving where the breakpoint was located; further, plaintiff contended that the poor visibility could have delayed rescuers from aiding the decedent. In considering plaintiff's argument, the trial court found no genuine issue of material fact, holding:

"Even assuming that the clarity of the water did constitute a dangerous condition, this condition was equally apparent to the decedent. As stated, the defendent was under no duty to warn of conditions which were open and obvious to all guests swimming in the pool. Thus, plaintiff's contention that poor water clarity hindered the decedent's rescue can only be based upon speculation, and is improper for avoiding a motion for summary judgment."

We agree with the trial court's determination. This same issue was raised in *Grimes v. Hettinger* (Ky.App.1978), 566 S.W.2d 769, a case in which a twelve-year-old girl drowned while attending a party at a private residential swimming pool. Plaintiffs alleged that an issue was raised regarding the clarity of the pool water. The court rejected this contention, noting that, assuming the clarity of the water constituted a dangerous condition, this condition was as evident to the decedent as it was to the pool owner. Thus, the court held that the owner had no duty to warn of a condition "which was readily apparent." *Id.* at 773. See, also, *Alabama Farm Bur. v. Hixon* (Ala.1988), 533 So.2d 518, 520 (cloudy water in swimming pool in which child drowned was obvious condition and thus defendant was not liable for drowning, even if condition of water presented unreasonable risk).

Upon review of the record, and construing the evidence most strongly in favor of plaintiff, we find that the trial court properly concluded that there was no genuine issue of material fact regarding potential liability on the part of defendant, and thus summary judgment was properly granted.

Plaintiff contends, under the second assignment of error, that the trial court erred by applying an erroneous definition of proximate cause in granting summary judgment in favor of defendants. Specifically, plaintiff points to language in the trial court's decision in which the court states as follows: "Even if the open and obvious doctrine was not applicable in the present case, summary judgment would still be proper, as the plaintiff has not shown to a reasonable degree of certainty how Eric Mullens–Steel[e] drown[ed]." Plaintiff asserts that she is

under no obligation to show the cause of decedent's death to a "reasonable degree of certainty."

Given the trial court's holding that defendant did not owe a duty to warn or protect the decedent, the court was not required to reach the issue of proximate cause. See *Galloway v. Ohio Power Co.* (Dec. 4, 1985), Licking App. No. CA-3142, unreported, 1985 WL 4181 (finding no duty upon the facts in the case, "we do not reach the question of proximate cause"); *Ault v. Provenza* (May 15, 1996), Lorain App. No. 95CA006210, unreported, 1996 WL 255889 (where defendant did not breach his duty to plaintiff, court need not reach issue of proximate cause). In light of our finding that the trial court properly determined the duty issue, we find any discussion by the trial court on the issue of proximate cause to be superfluous.

We would only note, however, that the phrase "reasonable degree of certainty," set forth in the trial court's opinion, appears to be in reference to plaintiff's submission of the affidavits of two experts who rendered opinions on the possible cause of death of the decedent. To the extent the trial court discussed the issue of proximate cause, we construe the trial court's language as no more than a determination that, in the absence of any evidence as to how decedent's injuries actually occurred, there were no facts upon which an opinion could be rendered showing that the alleged hazards (*e.g.*, cloudy water, the lack of a rope or float line, etc.) contributed to the accident and thus, expert testimony regarding the issue of causation would be merely speculative. See, *e.g.*, *Barham v. Knickrehm* (1996), 277 Ill.App.3d 1034, 214 Ill.Dec. 721, 661 N.E.2d 1166, 1170–1171 (liability cannot be predicated upon surmise or conjecture; where plaintiffs only allege that decedent was somehow injured in pool, any statements as to causation could be nothing more than speculation and conjecture); *Maher v. Madison Square Garden Corp.* (1926), 242 N.Y. 506, 152 N.E. 403, 404 (where nobody observed fourteen-year-old boy drown in crowded pool, "[n]o inference can be drawn that by act or omission of the defendant or any of its employees the boy was placed in a position of danger which caused his death, or that any greater care by the defendant could have averted accident"); *Glabecki v. Williams* (Feb. 7, 1991), Cuyahoga App. No. 57970, unreported, 1991 WL 12949 (where there was no evidentiary basis to determine how decedent may have drowned due to certain causes produced by separate defendants, and plaintiffs could not disprove that he drowned due to any factors outside defendants' control, any number of factors remain as possible causes of drowning; thus, because proximate cause cannot be based on speculation, "this in turn causes a failure of proof as to any particular cause created by any particular defendant"). Again, however, as noted above, based upon the trial court's resolution as to the issue of duty, there was no need

for the trial court to discuss the issue of proximate cause and plaintiff has shown no prejudicial error.

Under the third assignment of error, plaintiff argues that the trial court erred in finding that decedent assumed the risk of his injuries. This argument is based on the fact that the trial court, in the context of concluding that "the pool was an open and obvious condition," noted that the decedent, "admittedly a non-swimmer, * * * assumed a substantial risk by entering the Binsky pool." Plaintiff asserts that comparative negligence issues are inappropriate for resolution by summary judgment.

In *Anderson v. Ruoff* (1995), 100 Ohio App.3d 601, 604, 654 N.E.2d 449, 451, this court discussed the issue of the "open and obvious" doctrine in light of Ohio's adoption of comparative negligence under R.C. 2315.19, holding:

"The question of comparative negligence is never reached if the court determines that a landowner owes no duty. The open and obvious doctrine, therefore, is not inconsistent with the comparative negligence principles set forth in R.C. 2315.19. Rather, the open and obvious doctrine is determinative of the threshold issue, the landowner's duty. In the absence of duty, there is no negligence to compare."

See, also, *Hager, supra*, at 332–333, 29 OBR at 459–460, 505 N.E.2d at 986–987 (appellant's argument that trial court erred in determining that alleged contributory negligence or assumption of risk by plaintiff barred recovery is moot; in the absence of a duty owed to plaintiff, alleged negligence and alleged proximate cause of plaintiff's injuries are not part of the calculus prescribed by Ohio's comparative negligence statute); *Livengood v. ABS Contrs. Supply* (1998), 126 Ohio App.3d 464, 467, 710 N.E.2d 770, 772 ("[i]f the danger is open and obvious, no duty to warn exists, and the issue of whether the plaintiff voluntarily assumed the risk of injury is never reached. There is simply no duty to warn of an open and obvious danger").

Based upon the foregoing, plaintiff's first, second and third assignments of error are overruled and the judgment of the trial court, granting summary judgment in favor of defendant Beatrice Binsky, is hereby affirmed.

*Judgment affirmed.*

BOWMAN and JOHN C. YOUNG, JJ., concur.