**ESTATE OF VALESQUEZ, et al., appellants,**

v.

**CUNNINGHAM et al., appellees.**

[Cite as *Estate of Valesquez v. Cunningham* (2000), 137 Ohio App.3d 413.]

Court of Appeals of Ohio,
Fifth District, Ashland County.

No. 99–COA–01321.

Decided April 12, 2000.

414

*John E. Duda,* for appellants.

*Gregory Baron,* for appellees.

GWIN, Presiding Judge.

Appellants Estate of Ignacio Valesquez and Anthony Valesquez appeal a summary judgment of the Ashland County Common Pleas Court dismissing their complaint against appellees Earl and Lynn Cunningham.

### Assignment of Error

"The court erred in entering judgment summarily for the defendants–appellees Earl Cunningham and Lynn Cunningham."

At approximately 3 or 4 o'clock in the afternoon of August 15, 1992, Ignacio Valesquez and his girlfriend, Beverly Sheeks, went to the Eagles Club in Ashland. Sheeks and Valesquez began living together in March 1990, immediately after they met. At the Eagles Club, Ignacio drank two rum and cokes. At about 5 o'clock, the couple returned home, eating dinner at 6:30 p.m.

Later that evening, Ignacio and Beverly picked up Beverly's daughter, Lisa Smith, to celebrate Lisa's birthday. The group arrived at the AMVETS Club between 10:00 and 10:30 p.m. At AMVETS, Ignacio drank several beers. Lisa drank wine coolers, and a shot of a drink called a "storm cloud." Lisa did not know what was in the drink but later stated that it was potent. Appellee Lynn Cunningham was tending bar at AMVETS that night. She had served Ignacio at the club in the past. Appellee Earl "Jack" Cunningham was performing at AMVETS with a lip sync band called "One Night Stand." Jack knew Ignacio

from AMVETS but was not acquainted with him outside the club. Jack drank about four beers over the course of the evening.

When AMVETS closed at approximately 1:15 a.m., a group including Ignacio, Beverly, Jack, Lisa, and Calvin Williams went to the Sportsmen's Club to listen to a band called "The Red Neck Rockers." The group stayed at the bar until it closed at 2:30 a.m. Ignacio had a beer at the club but spent most of the evening dancing. When the bar closed, the group decided to go to Jack's house to swim in his pool. Before leaving, Ignacio purchased a twelve–pack of beer to take to the pool party.

The group proceeded to Cunningham's house. This was the first time Ignacio had been to the house and swam in the pool. After settling down his dogs, Jack took the twelve–pack of beer and a fifth of Black Velvet whiskey out to the patio adjoining the pool. Ignacio, Calvin, and Jack each opened a can of beer. Everyone except Calvin Williams took off his shoes and socks, and jumped into the pool with their clothes on. Jack and Calvin Williams each drank a "swig" of Black Velvet directly from the bottle. Ignacio and Lisa also took a "swig" from the bottle to toast Lisa's birthday.

The pool was three feet deep at the shallow end and eight feet deep at the deep end. The pool did not have a rope marking the drop off between the shallow and deep ends, did not have depth markings, and did not have underwater lights. The only illumination on the pool came from the kitchen light. The bottom of the pool was not visible after dark.

Ignacio and Jack engaged in a swimming race. Ignacio swam the length of the pool. Although his swim stroke was described by the other members of·the group as a "dog paddle," Ignacio beat Jack to the end of the pool, as Jack veered off to the side.

After ten to fifteen minutes, the entire group got out of the pool and went into the house. Jack began preparing sandwiches. While some of the members of the group ate sandwiches, Ignacio asked Lisa to go back into the pool with him. Ignacio and Lisa went back outside to the pool. Lisa got into the pool at the shallow end, and swam underwater. When she surfaced, Ignacio was in the deep end of the pool. Lisa swam to him. They talked for a short time, and Ignacio challenged her to a race to the shallow end of the pool. Lisa swam to the shallow end, only to discover that Ignacio had remained in the deep end of the pool. Lisa told Ignacio she was getting out, and he responded that he would go back into the house with her. When Lisa got out of the pool, Ignacio was standing by the ladder in the shallow end. Lisa assumed Ignacio could swim because he was from Mexico. Lisa proceeded into the house without him.

After Lisa went into the house, Beverly heard Ignacio splashing into the pool for a few minutes, followed by a big splash, followed by silence. None of the other members of the party heard splashing. When Ignacio did not come into the house shortly after Lisa returned, Jack opened the door and yelled, "Ignacio, get your ass in here." There was no response. Everyone went outside and began looking for Ignacio. Within a few minutes, Beverly called the police. When the police arrived, an officer shone a light into the pool. Ignacio was found floating in the deep end, toward the corner. While the officer stood holding the light, Calvin, Jack, and Lisa pulled Ignacio from the pool. The paramedics arrived on the scene. Ignacio was pronounced dead at a local hospital.

The coroner's report listed drowning as the cause of death. The report further stated that Ignacio had a blood alcohol level of .231, although all members of the group claimed that he did not appear to be intoxicated. Ignacio had several cement scratches on his forehead, which Lisa said occurred when she was pulling him from the pool. No autopsy was conducted. Beverly later testified that Ignacio had not been feeling well since returning from a visit to Mexico about three weeks before he died. She stated that Ignacio was tired and complained of chest pains. Dierdre Haas, Ignacio's ex-wife and the mother of his minor son Anthony, testified that she knew of no physical ailment, other than syphilis, affecting Ignacio at the time of his death. He was thirty-four years old.

Dierdre Haas filed the instant action as administrator of the estate, and on behalf of her minor son as next friend. The original defendants included the appellees herein, Lisa Smith, Calvin Johnson, a.k.a Williams, Beverly Sheeks, The Sportsman Restaurant and Lounge, The Peartree Restaurant, Charles Riling and his wife, Joseph Crouse, and several swimming pool companies. The complaint was filed on October 5, 1992. Appellees' motion for summary judgment was overruled on February 14, 1996. A bankruptcy stay was then placed on the claims against appellees. During the time the stay remained in effect, the claims against all other defendants were disposed of by the court. On September 1, 1999, the Ashland County Common Pleas Court lifted the stay and entered summary judgment on behalf of appellees.

## I.

Summary judgment is appropriate where there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The evidentiary materials filed in the case must demonstrate that there is no dispute as to any material fact, construing the evidence in the light most favorable to the nonmoving party. *Id.* We review summary judgment by the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212. The evidence before

the court on the instant motion for summary judgment included the depositions of Beverly Sheeks, Earl Cunningham, Lisa Smith, Dierdre Haas, Lynn Cunningham, and Calvin Williams, the Ashland County Coroner's report, the death certificate of Ignacio Valesquez, and the affidavit of Richard Smith.

To recover on a claim for negligence, the plaintiff must prove (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury. *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629. In the instant case, appellants alleged that appellees negligently allowed Ignacio to remain in a position of peril in an inebriated state in the swimming pool when they knew or should have known that the decedent was in imminent danger of harm or death. As a corollary to this argument, appellants alleged that appellees served the decedent additional alcohol at their home in spite of his inebriated state. The complaint also alleges that appellees were negligent in failing to adequately light the swimming pool area, failing to have underwater lights in the pool, failing to provide a safety rope, and failing to provide depth markers in the pool.

We first address the question of whether summary judgment was appropriate on the claim that appellees were negligent in serving the decedent alcohol and allowing him to remain unsupervised in the swimming pool, in an intoxicated state.

It is undisputed that the decedent was a social guest at appellees' residence. A host who invites a social guest to his premises owes the host the duty to (1) exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight should reasonably consider dangerous, if the host has reason to believe the guest does not know and will not discover such condition. *Scheibel v. Lipton* (1951), 156 Ohio St. 308, 46 O.O. 177, 102 N.E.2d 453, paragraph three of the syllabus. The duty owed by a landowner to his social guest presupposes that the amount of care required to discharge that duty will vary depending on the circumstances, one of which is the infancy of the guest, or the guest's inability to discern danger, or both. *DiGildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732, paragraph two of the syllabus.

The Eighth District considered an issue similar to that presented by the instant case, in a case in which the plaintiff coincidentally bears the same surname as the author of this opinion. *Gwin v. Phi Gamma Delta Fraternity* (Oct. 16, 1997), Cuyahoga App. No. 71694, unreported, 1997 WL 638808. In that

case, Charles Gwin was drinking beer on the roof of the fraternity house with several members of the fraternity. Eventually, only Gwin and one individual remained on the roof, where they fell asleep. Gwin was discovered lying in the parking lot next to the house, suffering permanent injuries from the fall. The appellants argued that the fraternity was liable under the first duty owed by a social host under *Scheibel, supra*, for allowing Gwin to go onto the roof in an intoxicated state and leaving him there with another guest. The appellants claimed that Gwin's intoxicated condition, which was known to the appellee, was a circumstance that acted to increase the appellee's duty of care to prevent him from falling off the roof of the house.

The court concluded that a higher standard of care regarding a person who has voluntarily become intoxicated is not within the duty imposed upon a land occupier as enunciated in *DiGildo. Gwin, supra*, at three. The condition of voluntary intoxication, as opposed to an involuntary condition of infancy, distinguished the case from *DiGildo. Id.* In reaching the conclusion that the fraternity did not owe the appellant a duty to protect Gwin from falling off the roof in his inebriated condition, the court relied on the policy outlined by the Ohio Supreme Court in *Smith v. The 10th Inning, Inc.* (1990), 49 Ohio St.3d 289, 551 N.E.2d 1296. After holding that an intoxicated patron has no cause of action against the permit holder who served the patron the alcohol, the Supreme Court stated in *Smith* that common sense public policy dictates that an adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior. *Id.* at 291, 551 N.E.2d at 1297–1298. The court stated that permitting an intoxicated patron a cause of action against a permit holder would send the wrong message to all citizens of this state because such a message would essentially state that a patron who has purchased alcohol from a permit holder may drink such alcohol with unbridled, unfettered impunity, and with full knowledge that the permit holder would ultimately be responsible for any harm caused by the patron's intoxication. *Id.*

More recently, the Supreme Court has reiterated this position in concluding that the bar to recovery announced in *Smith* applies where the intoxicated patron has not reached the legal drinking age of twenty-one, but has attained the age of majority. *Klever v. Canton Sachsenheim, Inc.* (1999), 86 Ohio St.3d 419, 715 N.E.2d 536. Although the court anchored its decision on statutory construction rather than the public policy rationale of *Smith*, the court noted that it would also conclude on the basis of policy that the *Smith* rule should apply to an underage adult drinker. *Id.* at 422, 715 N.E.2d at 539. If public policy bars an intoxicated individual from legally blaming the bartender who served him, the same rationale would likewise prevent an underage adult drinker, for whom taking the first sip from the first drink is unlawful, from legally blaming the server. *Id.*

420

A social host does not have a duty to maintain constant supervision of an adult guest, and generally, in the absence of a special relationship, there is no duty to act affirmatively for the protection of others. *Mullens v. Binsky* (1998), 130 Ohio App.3d 64, 71, 719 N.E.2d 599, 604. The state of voluntary intoxication does not impose upon a social guest a higher duty encompassing supervision or protection. *Gwin, supra.* Accordingly, appellees' duty of ordinary care did not encompass the duty to supervise Ignacio in the swimming pool.

As to the duty to warn imposed by *Scheibel*, it is well settled in Ohio law that a swimming pool is an open and obvious danger of which a landowner has no duty to warn. *Mullens*, 130 Ohio App.3d at 70–71, 719 N.E.2d at 603–604; *Hager v. Griesse* (1985), 29 Ohio App.3d 329, 331, 29 OBR 456, 458–459, 505 N.E.2d 982, 985–985. For the same reasons discussed above regarding whether the duty of ordinary care was heightened by the voluntary intoxication of a social guest, we conclude that the duty to warn is not heightened by the voluntary intoxication of the guest. While the duty to warn a small child or a person of limited mental capacity may be different from the duty to warn a person of ordinary capabilities, the state of voluntary intoxication does not impose a greater duty to warn.

We next turn to appellant's claim that appellees negligently served Ignacio alcohol when he was intoxicated. A social provider of intoxicating beverages is not held to the same duty of care as a commercial proprietor. *Settlemyer v. Wilmington Veterans Post No. 49* (1984), 11 Ohio St.3d 123, 127, 11 OBR 421, 424–425, 464 N.E.2d 521, 524. As pursuant to *Smith* and *Klever*, an intoxicated patron cannot maintain a cause of action against a liquor permit holder for self-inflicted injury or death due to his intoxication, appellees, as a social host, are not legally responsible for the consequences of the decedent's voluntary intoxication. Further, the undisputed evidence establishes that at appellee's residence, the only liquor consumed by the decedent was a can of beer, which was part of a twelve-pack he purchased himself, and a shot of Black Velvet provided by Jack Cunningham. There is no evidence that the proximate cause of Ignacio's death was the whiskey provided by appellees.

Appellants also claim negligence in failing to equip the pool with underwater lights, depth markings, and a safety rope marking the drop off between the shallow and deep end. Appellants also allege that the area surrounding the pool did not have adequate lighting. Appellants have presented no evidence that any of the physical characteristics of the pool were the proximate cause of the death of Ignacio. Ignacio swam the length of the pool shortly before his death. When Lisa Smith went into the house, Ignacio was standing in the shallow end of the pool, near the ladder. Just minutes earlier, Ignacio had exited the pool safely to

go into the house. There is no evidence as to how Ignacio drowned, and how his body ended up in the deep end of the pool. There is no evidence that had the pool been equipped with better lighting, a security rope, and/or depth markings, Ignacio would have safely exited the pool.

The court did not err in dismissing the complaint on summary judgment, as appellees were entitled to judgment as a matter of law. The assignment of error is overruled.

The judgment of the Ashland County Common Pleas Court is affirmed.

*Judgment affirmed.*

EDWARDS and MILLIGAN, JJ., concur.

JOHN R. MILLIGAN, Jr., J., retired, of the Fifth Appellate District, sitting by designation.