UDDIN, Admr., Appellant,

v.

EMBASSY SUITES HOTEL et al., Appellees.

[Cite as *Uddin v. Embassy Suites Hotel,* 165 Ohio App.3d 699, 2005-Ohio-6613.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–754.

Decided Dec. 13, 2005.

Twyford & Donahey P.L.L., W. Joseph Edwards, and Mark E. Defossez, for appellant.

Mansour, Gavin, Gerlack & Manos Co., L.P.A., William J. Muniak, and Amy L. Phillips, for appellees.

PETREE, Judge.

{¶ 1} Plaintiff-appellant, Al Uddin, administrator of the estate of Shayla Uddin, appeals from a judgment of the Franklin County Court of Common Pleas, which granted summary judgment in favor of defendants-appellees, Embassy Suites Hotel and Hilton Hotels Corporation (collectively, "defendants"). For the following reasons, we affirm in part, reverse in part, and remand the matter to the common pleas court.

{¶ 2} On April 29, 2000, Shayla Uddin, a ten-year-old child, drowned in an indoor pool at Embassy Suites Hotel, Columbus, Ohio, while she and her family attended a birthday party at the hotel. Thereafter, on March 27, 2002, in a wrongful-death and survivorship action, plaintiff sued defendants, as well as anonymous defendants, alleging two causes of action: (1) negligence and (2) liability based upon the doctrine of attractive nuisance.

{¶ 3} Defendants moved for summary judgment, claiming that (1) they complied with all safety regulations, (2) they exercised ordinary, reasonable care, and (3) they were not subject to liability under the attractive-nuisance doctrine. Thereafter, granting defendants' motion for summary judgment, the trial court rendered judgment in favor of defendants. From this judgment, plaintiff appeals and assigns a single error for our consideration:

The trial court erred in granting appellee's motion for summary judgment since a genuine issue of material fact existed as to the negligence of Embassy Suites.

{¶ 4} Appellate review of a lower court's granting of summary judgment is de novo. *Mitnaul v. Fairmount Presbyterian Church,* 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093, at ¶ 27. " '*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' " Id., quoting *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 5} Summary judgment is proper when a movant for summary judgment demonstrates that (1) no genuine issue of material fact exists, (2) the movant is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 6} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264; *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164; Civ.R. 56(E).

{¶ 7} "To maintain an action for damages for wrongful death upon the theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, *i.e.,* the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." *Bennison v. Stillpass Transit Co.* (1966), 5 Ohio St.2d 122, 34 O.O.2d 254, 214 N.E.2d 213, paragraph one of the syllabus. For a party to recover under a theory of negligence, all the elements of negligence must be demonstrated. *Whiting v. Ohio Dept. of Mental Health* (2001), 141 Ohio App.3d 198, 202, 750

N.E.2d 644. Furthermore, " 'negligence is without legal consequence unless it is a proximate cause of an injury.' " Id., quoting *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19.

■ {¶ 8} Whether a duty exists is a question of law for a court to determine. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. "There is no formula for ascertaining whether a duty exists. Duty ' * * * is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (Prosser, Law of Torts (4th ed.1971) pp. 325–326.)' " Id., quoting *Weirum v. RKO Gen., Inc.* (1975), 15 Cal.3d 40, 46, 123 Cal.Rptr. 468, 539 P.2d 36.

■ {¶ 9} In cases of premises liability, Ohio adheres to common-law classifications of invitee, licensee, and trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 315, 662 N.E.2d 287. Under Ohio law, the status of a person who enters upon the land of another, i.e., trespasser, licensee, or invitee, defines the scope of the legal duty that a landowner owes the entrant. Id., citing *Shump v. First Continental–Robinwood Assoc.* (1994), 71 Ohio St.3d 414, 417, 644 N.E.2d 291.

■ {¶ 10} "A trespasser is one who, without express or implied authorization, invitation or inducement, enters private premises purely for his own purposes or convenience." *McKinney v. Hartz & Restle Realtors, Inc.* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 510 N.E.2d 386. Comparatively, "[i]nvitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner," *Gladon,* 75 Ohio St.3d at 315, 662 N.E.2d 287, while "a licensee is one who enters upon the premises of another, by permission or acquiescence and not by invitation, for his own benefit or convenience." *Quinn v. Montgomery Cty. Educational Serv. Ctr.,* Montgomery App. No. 20596, 2005-Ohio-808, 2005 WL 435214, at ¶ 12, citing *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 502 N.E.2d 611; and *Richardson v. Novak* (Nov. 3, 1993), Montgomery App. No. 13947, 1993 WL 452007.

■ {¶ 11} Here, according to a police report,[1] a room was rented at the hotel where the birthday party was held. Because decedent and her family rightfully

---

1. Defendants attached an unauthenticated copy of a police report to their motion for summary judgment. Also, a newspaper article about the drowning was included with documents from the Columbus Health Department that defendants appended to their motion for summary judgment. Absent objection, we find that we may consider this evidence in this appeal. See *Oakley v. Reiser* (Dec. 21, 2001), Athens App. No. 01CA40, 2001 WL 1646687, fn. 2 (stating that "[d]ocuments which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and generally should not be considered by the trial court. * * * Neverthe-

came upon the hotel premises for some purpose that was beneficial to defendants as a business owner, we conclude that decedent and her family were business invitees.

{¶ 12} "Generally, an owner or occupier of business premises owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn invitees of latent or hidden dangers." *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, 828 N.E.2d 683, at ¶ 26, citing *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474, and *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 358, 12 O.O.3d 321, 390 N.E.2d 810. However, the owner or occupier of a business premise is not an insurer of a business invitee's safety. *Nageotte* at ¶ 26, citing *Paschal* at 203–204, 18 OBR 267, 480 N.E.2d 474.

{¶ 13} Accordingly, in this case, defendants, as landowners, were under a legal duty to maintain the premises in a reasonably safe condition and to warn decedent of latent or hidden dangers.

{¶ 14} In the present case, the trial court concluded that defendants were relieved of a duty toward decedent because the indoor swimming pool constituted an open-and-obvious danger. See, generally, *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 5, citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus (observing that under the open-and-obvious doctrine, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious"); *Armstrong* at ¶ 5 (stating that "[w]hen applicable * * * the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims").

{¶ 15} In *Armstrong,* reaffirming the viability of the open-and-obvious doctrine, the Supreme Court of Ohio explained that "[t]he rationale underlying [the open-and-obvious doctrine] is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" Id. at ¶ 5, quoting *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504.

{¶ 16} In *Brockmeyer v. Deuer* (Nov. 19, 1981), Franklin App. No. 81AP–537, 1981 WL 3605, a case involving an eight-year-old boy who drowned in an unused swimming pool, this court held that the condition of an abandoned swimming pool

---

less, this court may consider unsworn, uncertified, or unauthenticated evidence if neither party objected to such evidence during the trial court proceedings. * * * "); see, also, *Churchwell v. Red Roof Inns, Inc.* (Mar. 24, 1998), Franklin App. No. 97APE08–1125, 1998 WL 134329, at fn. 1.

and its potential perils were open and obvious and, as a matter of law, fell short of being hidden perils or traps. The *Brockmeyer* court observed that "[t]here was no disguise or concealment by the landowner of the statical condition that existed and was open and obvious to anyone contemplating using the abandoned swimming pool." Id.

{¶ 17} However, unlike *Brockmeyer*, the issue in this case does not concern whether an abandoned swimming pool and its potential perils constituted hidden perils or traps.

{¶ 18} In *Mullens v. Binsky* (1998), 130 Ohio App.3d 64, 719 N.E.2d 599, a case involving an 18–year–old guest who drowned in a swimming pool during a graduation party at a private residence, this court observed that " 'a pool becomes unreasonably dangerous only when there is a hidden defect or dangerous condition posing a risk of death or serious bodily harm.' " Id. at 71, 719 N.E.2d 599, quoting *Scifres v. Kraft* (Ky.App.1996), 916 S.W.2d 779, 781. *Mullens* further stated that "as noted by the trial court, a swimming pool presents an open and obvious condition that should be appreciated by both minors and adults." Id.

{¶ 19} However, subsequent to *Mullens*, this court has declined to determine whether a swimming pool constituted an open-and-obvious danger to a child under seven years of age. *Bae v. Dragoo & Assoc., Inc.,* 156 Ohio App.3d 103, 2004-Ohio-544, 804 N.E.2d 1007, at ¶ 15. Moreover, subsequent to *Mullens*, this court also distinguished *Mullens* when it stated that "this court's decision in [*Mullens* ], implying that a swimming pool is open and obvious to minors involved an 18 year old, not a child under the age of seven." *Bae v. Dragoo & Assoc. Inc.,* Franklin App. No. 03AP–254, 2004-Ohio-1297, 2004 WL 541021, at ¶ 11.

{¶ 20} Here, unlike *Mullens*, this case concerns a ten-year-old child, not an 18–year–old young adult. Such an age difference is not insignificant. In *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732, the Supreme Court of Ohio explained:

> Regardless of the precise label, the amount of care required to discharge a duty owed to a child of tender years is necessarily greater than that required to discharge a duty owed to an adult under the same circumstances. This is the approach long followed by this court and we see no reason to abandon it. "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter * * *. The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ; and therefore, the greater precaution should be taken, where children are exposed to them."

Id. at 127, 47 O.O.2d 282, 247 N.E.2d 732, quoting 39 Ohio Jurisprudence 2d (1959) 512, Negligence, Section 21. See, also, *Bennett v. Stanley* (2001), 92 Ohio St.3d 35, 39, 748 N.E.2d 41 (observing that "[t]his court has consistently held that children have a special status in tort law and that duties of care owed to children are different from duties owed to adults").

{¶ 21} We find that *Mullens* is inapposite because (1) this case concerns a decedent of tender years, (2) children have a special status in tort law, *Bennett*, 92 Ohio St.3d at 39, 748 N.E.2d 41, and (3) duties owed to children are different from duties owed to adults, *Di Gildo*, 18 Ohio St.2d at 127, 47 O.O.2d 282, 247 N.E.2d 732; cf. *Bennett*, 92 Ohio St.3d at 39, 748 N.E.2d 41, *Estate of Valesquez v. Cunningham* (2000), 137 Ohio App.3d 413, 420, 738 N.E.2d 876 (stating that "it is well settled in Ohio law that a swimming pool is an open and obvious danger of which a landowner has no duty to warn" but also acknowledging that "the duty to warn a small child or a person of limited mental capacity may be different from the duty to warn a person of ordinary capabilities").

{¶ 22} To support his claim that the trial court erred by granting summary judgment in favor of defendants, plaintiff claims that (1) defendants violated an administrative rule that required swimming pool water to be of a specified clarity and (2) in the face of this purported violation of an administrative rule, application of the open-and-obvious doctrine would render meaningless the Supreme Court of Ohio's decision in *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198.

{¶ 23} In *Chambers*, the Supreme Court of Ohio considered whether a violation of the Ohio Basic Building Code ("OBBC") constituted negligence per se. As explained by the Supreme Court, "[a]pplication of negligence *per se* in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability *per se* because the plaintiff will also have to prove proximate cause and damages." Id. at 565, 697 N.E.2d 198; see, also, id. at 566, 697 N.E.2d 198 (stating that "[n]egligence *per se* is tantamount to strict liability for purposes of proving that a defendant breached a duty").

{¶ 24} Contrasting administrative rules to legislative enactments, the *Chambers* court also observed that, unlike members of the General Assembly who are elected to office and thus accountable to constituents, administrative agencies have no accountability as do members of the General Assembly. Id. at 566–567, 697 N.E.2d 198. The *Chambers* court observed that to bestow upon administrative agencies the ability to propose and adopt rules that alter the proof requirements between litigants "would be tantamount to an unconstitutional delegation of legislative authority, since administrative agencies cannot dictate public policy." Id. at 568, 697 N.E.2d 198.

{¶ 25} Accordingly, *Chambers* held, "The violation of an administrative rule does not constitute negligence *per se;* however, such a violation may be admissible as evidence of negligence." Id. at syllabus.

{¶ 26} In the present case, plaintiff asserts that defendants violated former Ohio Adm.Code 3701–31–07(C). Under Ohio former Adm.Code 3701–31–07(C), "[t]he licensee shall ensure that the water in any public swimming pool or a special use pool has sufficient clarity when in use that a black disc, six inches in diameter, is readily visible when placed on a light field at the deepest point of the pool and is viewed from the pool side." See, also, former Ohio Adm.Code 3701–31–01(G) (defining "licensee") and former 3701–31–01(T) (defining "special use pool").

{¶ 27} To support a claim that the pool water at the time of drowning lacked sufficient clarity under former Ohio Adm.Code 3701–31–07(C), plaintiff relies upon affidavits of Barbara Lemming, Detective Dana Farbacher, and former police detective Tim O'Donnell.

{¶ 28} In her affidavit, Lemming, who was in the pool area when the decedent drowned, averred that "[t]he pool water was real creamy – almost milky. You could not see the bottom. I was in the pool for a short time that afternoon. When looking down, you could not see your feet." Lemming further averred: "I was sitting in a position to see the entire pool. However, I noticed that when a child went underwater that you lost sight of them because the water was so murky and creamy." According to Lemming, "[o]n April 29, 2000, the pool water at the Embassy Suites was so bad that you could not have seen a six inch disc at the pool bottom when looking down into the water."

{¶ 29} According to Detective Farbacher, who arrived at the drowning scene within two hours of the drowning, "[t]he pool water was cloudy and murky upon my examination." Furthermore, according to former police detective Tim O'Donnell, who responded to the drowning scene with Detective Farbacher, "[w]hile there, I examined the pool area and particularly the water. The pool water was very murky and cloudy – you could not see the bottom."

{¶ 30} By contrast, according to Nate Oyelakin, an employee of the Columbus City Health Department, Water Protection Division, who tested the pool water two days after decedent's drowning, the water clarity at the time of the testing was "very clear," despite a finding that the chlorine level in the pool was unacceptable. In a deposition, Oyelakin testified:

> [W]e wrote down water clarity was five. That means it was still very clear. And the reason why, because I saw five here, that means it was very clear. When we say it's clear, that means we can see the pool bottom from any distance from the deck, the main drain, because it's a big one, the main drain is

very visible from anywhere you stand, also the pool bottom, from the shallow end to the deep end. And when I give it five, that means it was clear.

{¶ 31} Construing this evidence in favor of plaintiff, the nonmoving party, we conclude that reasonable minds could conclude there is a genuine issue of fact concerning (1) whether the pool water was clear at the time of decedent's drowning and (2) whether, at the time of the drowning, defendants complied with the requirements of former Ohio Adm.Code 3701–31–07(C).

{¶ 32} However, even assuming arguendo that at the time of decedent's drowning the pool water lacked sufficient clarity as required by former Ohio Adm.Code 3701–31–07(C) and, therefore, that defendants were in violation of this administrative rule, we still must consider whether such a violation precludes application of the open-and-obvious doctrine.

{¶ 33} In *Francis v. Showcase Cinema Eastgate*, 155 Ohio App.3d 412, 2003-Ohio-6507, 801 N.E.2d 535, after depositing trash in a dumpster, the plaintiff, a cleaning-company employee, fell and sustained injuries as she was descending a flight of stairs. At the time of the employee's fall, the stairway lacked a handrail, an apparent violation of the Ohio Basic Building Code. Appealing from a grant of summary judgment in favor of the defendants, the plaintiff argued that the trial court erred in holding that the open-and-obvious doctrine precluded recovery.

{¶ 34} Reversing the trial court's grant of summary judgment in favor of the defendants, the First District Court of Appeals, construing *Chambers*, stated:

> [W]hile the Supreme Court of Ohio has reaffirmed the principle that a landowner owes no duty to protect an invitee from open and obvious dangers, it has also held that violations of the OBBC are evidence that the owner has breached a duty to the invitee. In this case, [defendant] suggests that this court should simply ignore the evidence of the OBBC violation, but we believe it would be improper to do so. To completely disregard the OBBC violation as a nullity under the open-and-obvious doctrine would be to ignore the holding in *Chambers* and to render the provisions of the OBBC without legal significance. We hold, then, that the evidence of the OBBC violation raised a genuine issue of material fact regarding [defendant's] duty and breach of duty, and that summary judgment was improperly granted.

Id. at ¶ 10.

{¶ 35} However, in *Olivier v. Leaf & Vine*, Miami App. No. 2004 CA 35, 2005-Ohio-1910, 2005 WL 937928, the Second District Court of Appeals disagreed with the First District's application of *Chambers* in *Francis*. The *Olivier* court stated:

> We disagree with the *Francis* court's application of *Chambers*. The *Chambers* court was not asked to address the open and obvious doctrine, and it did not do

so. Yet, the supreme court recognized that strict compliance with a multitude of administrative rules was "virtually impossible" and that treating violations as negligence per se would, in effect, make those subject to such rules the insurer of third parties who are harmed by any violation of such rules. *Chambers,* 82 Ohio St.3d at 568, 697 N.E.2d 198. In a footnote, the supreme court noted that it would be virtually impossible for a premise owner to strictly comply with the requirement mandating the removal of snow from steps without reference to exceptions or a reasonableness standard. In our view, the supreme court has implied that building code violations may be considered in light of the circumstances, including whether the condition was open and obvious to an invitee. The fact that a condition violates the building code may support the conclusions that the condition was dangerous and that the landowner had breached its duty to its invitee. However, such violations may be obvious and apparent to an invitee. In our judgment, if the violation were open and obvious, the open and obvious nature would "obviate[ ] the duty to warn." See *Armstrong,* 99 Ohio St.3d at 80, 788 N.E.2d 1088; see *Ryan v. Guan,* Licking App. No. 2003CA110, 2004-Ohio-4032 [2004 WL 1728519] (the open and obvious doctrine applied, despite the fact that the plaintiff had lost her balance on a curb ramp flare that was one and one-half times steeper than allowed by the applicable building codes); *Duncan v. Capitol South Comm. Urban Redev. Corp.,* Franklin App. No. 02AP–653, 2003-Ohio-1273 [2003 WL 1227586] (unreasonably high curb was an open and obvious danger); see also *Quinn v. Montgomery Cty. Educ. Serv. Ctr.,* Montgomery App. No. 20596, 2005-Ohio-808 [2005 WL 435214] (open and obvious doctrine applied to defect in the sidewalk, which municipality had a duty to maintain under R.C. 2744.02(B)(3)).

Id. at ¶ 28.

{¶ 36} Although we agree with *Olivier* that the Supreme Court in *Chambers* was not asked to consider the open-and-obvious doctrine, we cannot agree in every situation with *Olivier*'s conclusion that a violation of an administrative rule may constitute an open-and-obvious condition, thereby obviating a duty to warn.

{¶ 37} When we are considering a motion for summary judgment, to ignore a party's purported violation of an administrative rule that is supported by some evidence would vitiate the legal significance of an administrative rule. For instance, in a case wherein summary judgment is sought and application of the open-and-obvious rule is disputed, if a defendant's purported violation of the administrative code that was supported by some evidence were ignored, a party could violate an administrative rule, thereby possibly endangering public safety, yet be insulated from liability because such a violation constituted an open-and-obvious condition.

{¶ 38} Here, whether defendants violated former Ohio Adm.Code 3701–31–07(C) raises a genuine issue of material fact concerning defendants' duty and breach of duty toward decedent. For instance, if the pool water's clarity was diminished, thereby impairing potential rescue efforts, whether defendants violated pool-water clarity requirements under former Ohio Adm.Code 3701–31–07(C) would be material to determining whether defendants breached a duty of care toward decedent.

{¶ 39} During oral arguments, defendants contended, however, that in *Mullens,* 130 Ohio App.3d 64, 719 N.E.2d 599, this court has rejected as speculative an argument that poor water clarity delayed rescue efforts. *Mullens,* however, is distinguishable. In *Mullens,* the issue whether poor water clarity delayed rescue efforts did not arise from the defendant's alleged violation of an administrative rule that required the pool water to be a specific clarity.

{¶ 40} Accordingly, for the foregoing reasons, we hold that the trial court erred when it concluded that the open-and-obvious doctrine precluded recovery.

{¶ 41} Because the trial court found that defendants owed no duty to decedent under the open-and-obvious doctrine, it was not required to determine whether the pool water's clarity at the time of decedent's drowning constituted a proximate cause of decedent's drowning. However, because this court's review of a trial court's grant of summary judgment is de novo, *Mitnaul,* 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093, at ¶ 27, we consider the issue of proximate cause here.

{¶ 42} While the term is difficult to define, "proximate cause" is generally established when an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result that would not have taken place without the act. *Whiting,* 141 Ohio App.3d at 202–203, 750 N.E.2d 644, citing *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 423 N.E.2d 467. " 'The rule of proximate cause "requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligence act." ' " *Engle v. Salisbury Twp.,* Meigs App. No. 03CA11, 2004-Ohio-2029, 2004 WL 869362, at ¶ 28, quoting *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 143, 539 N.E.2d 614, quoting *Ross v. Nutt* (1964), 177 Ohio St. 113, 29 O.O.2d 313, 203 N.E.2d 118. See, also, *Whiting,* 141 Ohio App.3d at 203, 750 N.E.2d 644 ("[i]t is also well settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the breach of duty caused the particular damage is not sufficient as a matter of law").

{¶ 43} In *Mussivand,* the Supreme Court of Ohio held:

[T]o establish proximate cause, foreseeability must be found. In determining whether an intervening cause 'breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone.'

Id. at 321, 544 N.E.2d 265, quoting *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 39, 41 O.O. 117, 90 N.E.2d 859.

{¶ 44} "Ordinarily, proximate cause is a question of fact for the jury. * * * However, 'where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.'" *Engle,* 2004-Ohio-2029, 2004 WL 869362, at ¶ 27, quoting *Case v. Miami Chevrolet Co.* (1930), 38 Ohio App. 41, 45–46, 175 N.E. 224.

{¶ 45} Here, visibility at the time of the drowning is a relevant issue. In her affidavit, Barbara Lemming averred: "I was about twenty feet away and looking down into the water from where the little girl was found. At this distance, and looking down, I could not see the girl at the bottom of the pool. The water was creamy and milky."

{¶ 46} According to a police report, at the time of decedent's drowning, Lamar Reynolds, who was 18 years old at the time, was supervising approximately ten to 12 children who had been invited to the birthday party, while most of the adults were in a hotel room. According to the police report, Reynolds purportedly stated that he was in the water with the children, as well as with other children who were not invited to the birthday party, when he stepped on something in the pool. Reynolds informed the police that he was not certain of what he stepped on, but he believed that it was a body. Reynolds then purportedly announced that there was something in the water. Thereafter, according to the police report, Reynolds jumped out of the pool and ran to retrieve a metal pole to bring the body to the surface. As Reynolds was doing this, a bystander, Tony Lemming, jumped into the pool, grabbed decedent, and brought her to the surface, whereupon a hotel employee attempted to resuscitate decedent by CPR. According to the police report, Tony Lemming informed police that "there was a great deal of foam coming from the victim's mouth."

{¶ 47} According to Barbara Lemming, "[a]fter watching the children for 30–40 minutes, some screamed that a girl was missing. I looked down into the pool and saw no one." Lemming further averred: "While everyone else exited the pool, my husband Tony jumped into the water. Tony could not see the child but was feeling into the water with his hands and feet." According to Lemming, "I heard Tony yell that he felt and [sic] object and then saw him pull the little girl from the water. Her body was limp and foam was coming from her mouth."

{¶ 48} Here, we conclude that, under the facts and circumstances of this case, the facts do not preclude a reasonable inference that defendants' alleged violation of former Ohio Adm.Code 3701–31–07(C) constituted the proximate cause of decedent's drowning. Consequently, under the facts and circumstances of this case, whether defendants' alleged violation of former Ohio Adm.Code 3701–31–07(C) constituted the proximate cause of decedent's drowning is a question of fact for the fact finder.

{¶ 49} Besides alleging negligence, plaintiff also claimed that defendants were liable based upon the doctrine of attractive nuisance.

{¶ 50} In *Bennett*, 92 Ohio St.3d at 47, 748 N.E.2d 41, the Supreme Court of Ohio expressly adopted the attractive-nuisance doctrine contained in Restatement of the Law 2d, Torts (1965), Section 339. *Bennett* held:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or to otherwise protect the children.

Id. at paragraph one of the syllabus, adopting Restatement of the Law 2d, Torts (1965), Section 339.

{¶ 51} Here, however, decedent at the time of the drowning was an invitee, not a child trespasser; therefore, the attractive-nuisance doctrine is inapplicable. See *Bae v. Dragoo & Assoc.*, 156 Ohio App.3d 103, 2004-Ohio-544, 804 N.E.2d

1007, at ¶ 15, fn. 3 (wherein this court observed that "the attractive-nuisance doctrine technically does not apply, because decedent was not a child trespasser").

{¶ 52} Consequently, because the attractive-nuisance doctrine is inapplicable, we hold that the trial court correctly determined that plaintiff could not prevail on his second cause of action that was premised upon that doctrine.

{¶ 53} Therefore, to the extent that plaintiff contends that the trial court erred by granting partial summary judgment in favor of defendants concerning plaintiff's claim of liability based upon the attractive-nuisance doctrine, we find such a contention is not well taken.

{¶ 54} However, having concluded that the open-and-obvious doctrine does not preclude recovery and that there is a genuine issue of material fact as to whether defendants breached a duty of care to decedent and whether that breach proximately caused decedent's death, we hold that plaintiff's contention that the trial court erred when it granted summary judgment in favor of defendants is well taken. Therefore, we sustain plaintiff's sole assignment of error.

{¶ 55} Accordingly, plaintiff's sole assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

BRYANT, J., concurs separately.

CHRISTLEY, J., concurs in part and dissents in part.

CHRISTLEY, J., retired of the Eleventh Appellate District, sitting by assignment.

BRYANT, Judge, concurring separately.

{¶ 56} Although I agree with the lead opinion's conclusion that the trial court erred in granting summary judgment in favor of defendants, the definitive issue is whether the condition of the pool is an open and obvious danger that obviates the landowner's duty to warn. More specifically, the question is whether a ten-year-old child can appreciate the additional dangers associated with cloudy pool water so as to preclude the application of the open-and-obvious doctrine.

{¶ 57} The trial court concluded that defendants were relieved of a duty toward decedent because the indoor swimming pool constituted an open and obvious danger. The rationale underlying the open-and-obvious doctrine is that the open

and obvious nature of the hazard serves as a warning, and thus a landowner may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 5.

{¶ 58} While this court has held that "a swimming pool presents an open and obvious condition that should be appreciated by both minors and adults," the open-and-obvious doctrine does not relieve an occupier's duty to maintain its premises in a reasonably safe condition when the pool becomes unreasonably dangerous by a hidden defect or dangerous condition that poses a risk of death or serious bodily harm. *Mullens v. Binsky* (1998), 130 Ohio App.3d 64, 71, 719 N.E.2d 599. As the Supreme Court has explained, "Children of tender years, and youthful persons generally, are entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter * * *. The same discernment and foresight in discovering defects and dangers cannot be reasonably expected of them, that older and experienced persons habitually employ." *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 247 N.E.2d 732.

{¶ 59} When I apply the open-and-obvious doctrine in conjunction with the special status Ohio courts bestow upon minors, I conclude that even if a swimming pool may not generally present a hidden danger involving an unreasonably dangerous condition, a minor may not be able to foresee or appreciate the dangers posed by failure to comply with pertinent administrative regulations. An adult may instantly recognize that cloudy water increases his or her risk of drowning because the diminished clarity impairs the vision of those supervising, thereby hindering potential rescue efforts. To a ten-year-old child, however, the danger may not be as readily apparent. Because, as the lead opinion notes, a genuine issue of material fact arises concerning application of the open-and-obvious doctrine as it relates to the condition of the pool at the time of decedent's drowning, and because the dangers associated with the condition are not necessarily apparent to a ten-year-old child, I concur with the lead opinion's conclusion that a genuine issue of material fact precludes summary judgment to defendants concerning defendants' duty and breach of duty toward decedent.

CHRISTLEY, Judge, concurring in part and dissenting in part.

{¶ 60} Although I concur with the majority's conclusion regarding plaintiff's attractive-nuisance claim, I respectfully dissent from the majority's conclusion regarding plaintiff's negligence claim. The majority concludes that plaintiff presented a genuine issue of material fact as to the duty element of negligence, predicated solely upon a violation of former Ohio Adm.Code 3701–31–07(C). I disagree.

{¶ 61} The initial issue is whether sufficient evidence was presented during the summary judgment exercise to establish a possible violation of former Ohio Adm.Code 3701–31–07(C). Viewing the evidence in a light most favorable to the plaintiff, the nonmoving party, the majority correctly decides that the evidence established a genuine issue of material fact regarding an administrative violation.

{¶ 62} As an aside, I would note that at trial, the trial court arguably could have difficulty in finding all of Barbara Lemming's testimony to be admissible. Specifically, she reaches a conclusion regarding the potential visibility of a six-inch black disk that is supported only by her stated inability to see the bottom of the pool. Being unable to see the bottom does not equate to being unable to see a six-inch black disk on the bottom. It would be more likely that only an expert could lay a foundation sufficient to reach such a conclusion.

{¶ 63} Nevertheless, the majority then proceeds to extend the Supreme Court of Ohio's ruling in *Chambers v. St. Mary's School* (1998), 82 Ohio St.3d 563, 697 N.E.2d 198, by holding as follows: "[W]hether defendants violated former Ohio Adm.Code 3701–31–07(C) raises a genuine issue of material fact concerning defendants' duty and breach of duty toward decedent."

{¶ 64} Based upon this determination, *and this determination only,* the majority concludes that the trial court erred in finding that the open-and-obvious doctrine precluded recovery on the negligence claim. In doing so, the majority operates on the belief that the possibility of an administrative violation, standing alone, obviates the open-and-obvious doctrine. As a result, the majority's de novo review fails to provide any further analysis as to whether the doctrine applies. I respectfully disagree with that analysis.

{¶ 65} The First Appellate District's holding in *Francis v. Showcase Cinema Eastgate,* 155 Ohio App.3d 412, 2003-Ohio-6507, 801 N.E.2d 535, is analogous to the majority's holding, to wit: "We hold, then, that the evidence of the [Ohio Basic Building Code] violation raised a genuine issue of material fact regarding [defendants'] duty and breach of duty, and that summary judgment was improperly granted." Id. at ¶ 10.

{¶ 66} Like the majority, the *Francis* court held that, based upon *Chambers,* an apparent administrative violation, standing alone, was sufficient to create a genuine issue of material fact as to the duty element and, therefore, the applicability of the open-and-obvious doctrine was never explored.

{¶ 67} In *Olivier v. Leaf & Vine,* Miami App. No. 2004 CA 35, 2005-Ohio-1910, 2005 WL 937928, the Second District Court of Appeals properly determined that the *Francis* court misapplied and misconstrued *Chambers.* Specifically, in examining *Chambers,* the *Olivier* court stated: "[T]he supreme court has implied that building code violations may be considered in light of the circumstances,

*including whether the condition was open and obvious to an invitee.* The fact that a condition violates the building code may support the conclusions that the condition was dangerous and that the landowner had breached its duty to its invitee. *However, such violations may be obvious and apparent to an invitee.*" (Emphasis added.) Id. at ¶ 28.

{¶ 68} In short, contrary to *Francis, Chambers* stands for the proposition that a violation of an administrative regulation is simply evidence that the premises owner breached his or her duty of care and that this evidence should be considered in light of the surrounding circumstances. *Chambers*, however, does not stand for the proposition that a possible administrative violation prohibits the application of the open-and-obvious doctrine. Thus, I believe that the majority errs by failing to determine whether the condition created by the apparent violation of former Ohio Adm.Code 3701–31–07(C) was an open-and-obvious danger.

{¶ 69} That being said, I will address this issue. "The determination of whether a hazard is latent or obvious depends upon the particular circumstances surrounding the hazard." *Green v. China House* (1997), 123 Ohio App.3d 208, 212, 703 N.E.2d 872. Thus, whether a condition is open and obvious requires a fact-intensive inquiry. *Olivier*, 2005-Ohio-1910, 2005 WL 937928, at ¶ 31. In *Mullens v. Binsky* (1998), 130 Ohio App.3d 64, 71, 719 N.E.2d 599, this court determined that a swimming pool can present an open-and-obvious danger to either a minor child or adult. See, also, *Sharpley v. Bole*, Cuyahoga App. No. 83436, 2004-Ohio-5729, 2004 WL 2425718, at ¶ 14 ("It is generally accepted that ponds, pools, lakes, streams, and other waters embody perils that are deemed obvious to children of the tenderest years").

{¶ 70} In the instant case, the evidence presented during the summary judgment exercise clearly established an open-and-obvious danger. This determination is based upon the circumstances surrounding the accident and the obvious condition of the hotel pool.

{¶ 71} At the time of the decedent's drowning, there were approximately 25 children playing in a 340–square–foot pool, with a maximum depth of five feet. Reynolds was the sole designated adult supervisor of the approximately 18 children in the birthday party and was in the pool when the accident occurred. Barbara Lemming attested that she noticed the pool water was a creamy-white color and that she could not see her feet while standing in the pool. She also stated that her husband, Tony Lemming, entered the pool in an attempt to save the decedent. Barbara Lemming attested that she could not see the decedent's body at the bottom of the pool, and that the decedent's body was visible only once it was at the water's surface.

{¶ 72} Likewise, Detective Farbacher and Tim O'Donnell attested that the pool was murky and cloudy. Detective Farbacher specifically stated that the bottom of the pool was not visible. Thus, there was considerable testimony that the dangerous condition of the pool was apparent to a number of people who were present at the time the tragedy occurred. There is no testimony that the hotel was aware of the condition. Further, there was testimony that the hotel had, on previous occasions of testing and inspection, passed such tests and inspections.

{¶ 73} The foregoing demonstrates that the dangerous condition of the pool would have been obvious to the swimmers, the parents, and the designated adult supervisor, Reynolds, who would have been *in loco parentis.* See, e.g., *Evans v. Ohio State Univ.* (1996), 112 Ohio App.3d 724, 737, 680 N.E.2d 161. Due to the open-and-obvious nature of the dangerous condition, the trial court properly determined that plaintiff could not establish the duty element. In other words, despite the apparent administrative violation, the undisputed surrounding circumstances of this tragic accident establish an open-and-obvious danger that precludes plaintiff's negligence action. Hence, I would affirm the trial court's judgment denying plaintiff's negligence claim.