OPINION
{¶ 1} Plaintiff-appellant Janet Braglin appeals the trial court's May 20, 2005, decision and judgment entry excluding the testimony of two of appellant's expert witnesses, and the trial court's subsequent December 7, 2005, judgment entry granting defendant-appellee Lempco Industries, Inc.'s motion for summary judgment.
 SUMMARY OF FACTS AND LAW {¶ 2} Appellee Lempco Industries, Inc. ("Lempco") is a manufacturer of metal products, and operates a facility in New Lexington, Ohio. Various chemicals were used as lubricants and solvents as part of appellee's processing of raw metals into finished products. Some of these chemicals, as well as some of the metals themselves, contained potentially carcinogenic compounds. Appellant's late husband, Andrew Braglin, Jr., was employed by appellee Lempco for over thirty (30) years, during which time he worked in various positions. Andrew was diagnosed with pancreatic cancer in 1997. He died of the disease on March 4, 1998.
 {¶ 3} On March 3, 2000, the appellant filed an intentional tort action against appellee. After initially dismissing the action under Civ. R. 41(A), appellant refiled the action against appellee on October 10, 2001. On March 13, 2003, appellee filed a motion for summary judgment on the grounds that appellant had failed to prove the requisite level of intent required by Fyffe v. Jeno's Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, in order to sustain her intentional tort claim. The trial court granted appellee's motion for summary judgment on May 20, 2003, and the appellant appealed. Upon consideration, this court reversed the judgment of the *Page 3 
trial court and remanded the matter for further proceedings. See,Braglin v. Lempco Industries, Inc., Perry App. No. 03CA13,2004-Ohio-291.
 {¶ 4} On January 28, 2005, appellee filed a motion to exclude the expert testimony of two of appellant's experts, Dr. Debra L. Gray and Dr. Frederick LeSar. On March 31, 2005, the trial court conducted a hearing on the motion to exclude. On May 20, 2005, the trial court issued a decision and judgment entry in which it granted the appellee's motion to exclude the testimony of Drs. Gray and LeSar on the basis that the testimony of said experts was not based on reliable, scientific, technical or other specialized knowledge or information and that their testimony would not aid the trier of fact in determining the cause of Mr. Braglin's death.
 {¶ 5} On May 31, 2005, appellee filed a motion for summary judgment, arguing that without the expert testimony of Drs. Gray and LeSar, appellant had no evidence regarding proximate cause. Thus, appellee argued, no genuine issue of material fact remained regarding proximate cause, and appellee was therefore entitled to judgment as a matter of law. Appellant filed a response to appellee's motion for summary judgment on October 28, 2005, to which appellee filed a reply on November 14, 2005. On December 7, 2005, the trial court issued a judgment entry in which it granted appellee's motion for summary judgment. Appellant appeals the May 20, 2005,[1] judgment excluding the testimony of Drs. Gray and LeSar, as well as the December 7, 2005, judgment granting appellee's motion for summary judgment, setting forth one assignment of error: *Page 4 
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING SUMMARY JUDGMENT BASED UPON ITS EXCLUSION OF APPELLANT'S EXPERTS AND BY WEIGHING THE EVIDENCE AND JUDGING THE ULTIMATE CONCLUSIONS OF APPELLANT'S EXPERTS AS SUCH DETERMINATIONS ARE WITHIN THE SOLE PROVENCE [SIC] OF THE JURY."
 {¶ 7} In her sole assignment of error, the appellant argues that the trial court abused its discretion when it excluded the expert testimony of Drs. Gray and LeSar, and thus improperly granted summary judgment. We disagree.
 Exclusion of Expert Witness Testimony {¶ 8} "A determination as to the admissibility of expert testimony is a matter generally within the discretion of the trial judge and will not be disturbed absent an abuse of discretion." Miller v. Bike AthleticCompany, 80 Ohio St.3d 607, 616, 1998-Ohio-178, 687 N.E.2d 735. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Thus, our initial inquiry is whether the trial court abused its discretion when it excluded the expert testimony of Drs. Grey and LeSar.
 {¶ 9} The admissibility of expert testimony is governed by Rule 702 of the Ohio Rules of Evidence, which provides as follows:
 {¶ 10} "A witness may testify as an expert if all of the following apply: *Page 5 
 {¶ 11} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 12} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 13} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 14} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 15} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 16} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 17} Trial courts utilize Evid. R. 702 to perform a gatekeeping function through which they ensure that expert testimony is sufficiently relevant and reliable. Valentine v. Conrad, 110 Ohio St.3d 42,2006-Ohio-3561, 850 N.E.2d 683, reconsideration denied by111 Ohio St.3d 1418, 2006-Ohio-5083, 854 N.E.2d 1095, at ¶ 17. In the case sub judice, Evid. R. 702 (A) and (B) are not at issue. The question herein arises with regard to Evid. R. 702(C) and whether the testimony of *Page 6 
Drs. Gray and LeSar is based upon reliable scientific, technical, or other specialized information.
 {¶ 18} The facts of the case sub judice are similar to the facts in the recent Ohio Supreme Court decision of Valentine, supra. InValentine, the decedent was employed by PPG Industries, Inc. from 1969 to 1997, and was allegedly exposed to various toxic chemicals throughout his employment. In 1997, he was diagnosed with a glioblastoma multiforme, a form of brain cancer from which he died in May of 1999. The decedent's widow alleged that her husband's exposure to chemicals throughout his employment with PPG caused the development of his cancer and resulting death. She proffered the expert testimony of two of her husband's treating physicians, as well as the expert testimony of an industrial hygienist. Said experts based their opinions on "the totality of their experience as practitioners, their knowledge of Mr. Valentine's condition and background, medical and genetic research, animal studies, and epidemiologic studies".[2] Id. at ¶ 5.
 {¶ 19} Both of the decedent's treating physicians acknowledged that "no chemical is known to cause glioblastoma multiforme and that ionizing radiation, which is not involved in this case, is the only proven cause of the disease." Id. The Court held that expert testimony that the decedent's brain cancer was caused by workplace exposure to chemicals was not based on reliable scientific methodology such that it was admissible, and held further that the employer's motion for summary judgment was properly granted by the trial court. *Page 7 
 {¶ 20} The Valentine Court stated: . . . "None of the experts' opinions cited any studies showing a causal connection between chemical exposure and glioblastoma multiforme. The epidemiological studies did not involve persons in the same industry in which Valentine worked and did not identify a particular chemical or group of chemicals that cause glioblastoma multiforme. Similarly, the animal studies cited did not indicate that brain tumors develop across species. Moreover, the fact that a number of the chemicals to which Mr. Valentine was exposed have been classified as carcinogens does not establish that they are capable, individually or collectively, of causing glioblastoma multiforme. To arrive at their opinion, the experts were required to extrapolate from the conclusions of the underlying materials. The trial court did not abuse its discretion in finding that the experts did not adequately explain the scientific basis for doing so." Id. at ¶ 21.
 {¶ 21} The Court went on to state "The experts relied heavily on differential diagnosis to reach their conclusions. `Differential diagnosis' describes the process of isolating the cause of a patient's symptoms through the systematic elimination of all potential causes . . ." Although differential diagnosis is a standard scientific method for determining causation, . . . its use is appropriate only when considering potential causes that are scientifically known. . . ." (Citations omitted.) Id. at ¶ 22.
 {¶ 22} In the case sub judice, Dr. Gray based her opinion on her review of the Material Safety Data Sheets (MSDS) from Lempco, her visit to the Lempco facility, her review of the depositions of appellant and the decedent's co-workers, her conversations with appellant and the decedent's two daughters, a review of the *Page 8 
decedent's medical records, and a search of the occupational epidemiologic literature. Dr. Gray is a professor at The Ohio State University. She has a B.S. degree in microbiology, a Masters degree in insect toxicology and a Ph.D. from The Ohio State University.
 {¶ 23} Dr. LeSar, M.D., is a general practitioner in Lancaster, Ohio who treated Mr. Braglin in 1987 and 1991. Mr. Braglin was seen by another doctor in Dr. LeSar's office in 1997. As a result it was discovered that Mr. Braglin had pancreatic cancer. Dr. LeSar reviewed Mr. Braglin's medical charts, MSDS of raw materials and tooling allegedly used at Lempco and the deposition of Mrs. Braglin. At the Motion to Exclude hearing, Dr. LeSar stated he had studied the medical literature related to his case, but was unable to identify them. His opinion was also based on twenty years in practice. The trial court stated, "It appears to the Court that Dr. LeSar made an arbitrary determination with no basis in scientific facts other than his own subjective opinion that 75% of Mr. Braglin's pancreatic cancer is attributable to exposure at work and 25% to tobacco smoking for 34 years." (May 20, 2005, Judgment Entry)
 {¶ 24} Dr. Gray opined that the products allegedly present at Lempco were "risk factors" with regard to the decedent's pancreatic cancer. In reaching her opinion, Dr. Gray extrapolated from epidemiologic studies, and conceded that throughout the epidemiology literature, the definition of "risk factor" is different than the definition of the term "cause". Risk factor is an assessment of statistical association. For instance, an epidemiologic study may show that there is a statistical relationship between exposure to certain chemicals in the workplace and *Page 9 
the occurrence of pancreatic cancer. That statistical relationship does not necessarily indicate direct cause "in the way toxicologists think about cause and effect on a molecular level" but may be an indication of a mechanism. (See transcript of March 31, 2005 hearing on Motion to Exclude at p. 28 — Quotation is from Dr. Gray)
 {¶ 25} Both Dr. Gray and Dr. LeSar acknowledged that the medical literature is inconsistent with regard to whether occupational exposure to various chemicals is a risk factor with respect to pancreatic cancer. Dr. Gray summed up the status of the epidemiologic literature in a letter she wrote on August 16, 2002.
 {¶ 26} "I reviewed the epidemiologic literature with respect to possible risk factors for pancreatic cancer that may have been relevant to Mr. Braglin. Tobacco smoking is the only risk factor that has been identified consistently. Various authors provide a range of estimates for the contribution of smoking to pancreatic cancer, with 30% being a commonly proposed value [references to literature deleted]. Other risk factors that appear to be related to the development of pancreatic cancer in some individuals include diabetes, obesity and high-fat diet, chronic pancreatitis, having a first-degree relative diagnosed with pancreatic cancer and other factors such as occupational exposures. With the exception of tobacco smoking and rare familial kindred groups, the literature includes studies showing both positive effects and no effects on the risk of pancreatic cancer from these other factors. For the reasons mentioned previously, epidemiologic studies have been limited in their ability to definitively identify risk factors for pancreatic caner. This leaves the greater proportion of the causality of this disease undefined. . . ." (Defendant's Exhibit B-I *Page 10 
from the March 31, 2005, hearing on the Motion to Exclude). Furthermore, neither Dr. Gray nor Dr. LeSar cited any studies that showed a causal connection between chemical exposure and pancreatic cancer.
 {¶ 27} Andrew Braglin's death was tragic, and it is understandable why the appellant suspects that Mr. Braglin's death was caused by exposure to chemicals in the place he worked for thirty years. Pancreatic cancer is a relatively rare form of cancer and Mr. Braglin died at a younger age than average for pancreatic cancer patients. In addition, he had workplace exposure to chlorinated hydrocarbon solvents, lubricating oils and various substances in metal alloys that were shed in grinding processes. However, the expert testimony proffered by appellant's experts simply did not establish the requisite causal connection between the decedent's exposure and his pancreatic cancer based upon the law as set forth in Valentine, supra. We conclude that the trial court did not abuse its discretion when it excluded the expert testimony of Drs. Gray and LeSar.
 Summary Judgment {¶ 28} We next determine whether summary judgment was appropriate herein. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56(C), which provides in pertinent part: "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine *Page 11 
issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 29} "Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial." Vahila v. Hall, 77 Ohio St.3d 421, 429,1997-Ohio-259, 674 N.E.2d 1164, citing Dresher v. Burt,75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.
 {¶ 30} In order to prevail on her intentional tort claim against appellee, appellant must prove, inter alia, that her husband's pancreatic cancer was proximately caused by exposure to toxic chemicals during the course of his employment with appellee. Proximate cause has generally been found when an *Page 12 
original act is wrongful and, in a natural and continuous sequence, produces a result that would not have occurred without the wrongful act. See, generally, Uddin v. Embassy Suites Hotel, 165 Ohio App.3d 699,2005-Ohio-6613, 848 N.E.2d 519, ¶ 42. In order to prove the proximate cause of a medical condition, expert testimony is generally necessary. See, Darnell v. Eastman (1970), 23 Ohio St.2d 13, 261 N.E.2d 114, at syllabus. In order to be admissible, expert testimony must comply with the Ohio Rules of Evidence. As set forth above, the testimony of Drs. Gray and LeSar did not comply with Evid. R. 702(C), and was therefore properly excluded by the trial court.
 {¶ 31} Without the expert testimony of Drs. Gray and LeSar, appellant is unable to prove proximate cause, and without proximate cause, the appellant is unable to prove all the elements of her cause of action. The trial court thus properly granted appellee's motion for summary judgment. *Page 13 
 {¶ 32} Appellant's sole assignment of error is overruled, and the judgment of the Perry County Court of Common Pleas is hereby affirmed.
By: Edwards, J. Gwin, P.J. and Hoffman, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Appellant initially appealed the May 20, 2005, decision and judgment entry on June 20, 2005. On September 30, 2005, this court dismissed said appeal for want of a final appealable order.
[2] Epidemiologic studies are studies of "the causes of diseases in humans as inferred from observation of humans." Valentine v.Conrad, 158 Ohio App. 3d 615, 2004-Ohio-4521, 821 N.E.2d 580, affirmed by Valentine, supra, at ¶ 38. *Page 1